# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1806 | **DATE** | 9/25/2000 |
| **CASE TITLE** | Word Wrestling Federation, Inc. f/k/a Titan Sports, Inc. vs. Posters Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Graphic Communication Services, Inc.'s Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Graphic Communication Services, Inc.'s motion for summary judgment [#43] is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices: 5 | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 26 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 00 SEP 25 PM 4: 47 | 9-25-00 date mailed notice | |
| mrl | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WORLD WRESTLING FEDERATION, INC. f/k/a TITAN SPORTS, INC. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 99 C 1806 <br>) |
| POSTERS, INC. GRAPHIC COMMUNICATION SERVICES, INC. PATRICIA FULLER, RICHARD LAZZARA, VARIOUS JOHN AND JANE DOES, AND VARIOUS XYZ CORPORATIONS, | ) HONORABLE DAVID H. COAR<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants | ) |

## MEMORANDUM OPINION AND ORDER

The World Wrestling Federation Entertainment, Inc. ("WWF"), formerly known as Titan Sports, Inc. sued Graphic Communication Services, Inc. ("Graphic"), and various other known and unknown individuals and corporations for counterfeiting posters of WWF wrestlers in violation of the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (also known as the "Lanham Act"). Graphic has moved for partial summary judgment, claiming that it is an "innocent infringer" and therefore can only be subject to an injunction against future printing. For the reasons stated below, the Court finds that there are genuine issues of material fact that preclude the entry of summary judgment. Therefore, Graphic's motion is DENIED.

### Background

The facts, for purposes of this motion, are not very complicated. Sometime late in the summer of 1998, Posters Inc., a co-defendant in this case, asked Graphic to print thousands of posters of different WWF wrestlers, including "Stone Cold Steve Austin," "Sable," and the "Undertaker." In connection with this business transaction, Posters gave Graphic an unsigned letter

saying that Posters had the right to have certain images reproduced and that Posters would hold Graphic harmless in connection with the reproduction of these posters. The letter did not identify any specific images that Posters had permission to reproduce. Instead it referred generally to its rights to have the images reproduced. Walter Lucas, Graphic's President, testified that he took the letter at face value and did not inquire further regarding Posters' rights to reproduce the wrestler's images. According to Lucas, he was not familiar with the WWF or the wrestlers portrayed in the posters. Lucas also testified that he did not see every poster that Graphic printed. Later in 1998, Graphic reproduced these images in poster form.

On March 24, 1999, pursuant to an amended temporary restraining order and seizure order issued in this case, Robert Menke and two Chicago Police officers seized various materials related to the reproduction of thousands of counterfeit WWF posters at Graphic's place of business. During the seizure, Lucas admitted to Menke that Graphic had printed posters for Posters, including posters of a person that Lucas voluntarily referred to as "Stone Cold Steve Austin." Additionally, according to Menke, Lucas told him that he was going to contact his attorney and countersue the WWF because it had "deep pockets." Graphic has moved for partial summary judgment.

## Applicable Standard Under the Lanham Act

Graphic's partial motion for summary judgment asks this Court to determine, assuming that the posters in question violate the Lanham Act, whether it can be liable for anything more than an injunction from future printing. The first task is to determine the appropriate Lanham Act legal standard to apply to Graphic's motion for summary judgment. Graphic has pointed to two different subsections of Section 32 of the Act. Section 32(1) provides for liability in subsection (b), but then qualifies the remedies available in certain circumstances by stating that:

> the registrant *shall not be able to recover profits or damages* unless the acts have been committed *with knowledge* that such imitation is intended to be used to cause confusion, or to cause mistake or to deceive.

15 U.S.C. § 1114(1) (emphasis added). In addition to the limitation on remedies against defendants who act "without knowledge," subsection 2 contains a further limitation on remedies in certain circumstances. Section 32(2) provides that:

> [w]here an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she is an *innocent infringer* or *innocent violator*, the owner of the right infringed or person bringing the action under § 11125(a) of this title shall be entitled as against such infringer or violator *only to an injunction against future printing*.

15 U.S.C. § 1114(2)(A). Each of these subsections of the Lanham Act express a different mental state requirement and a different limitation on a plaintiff's remedies. Graphic claims to be an "innocent infringer" as that term is used in Section 32(2).

The phrase "innocent infringer" is not defined in the statute. Consequently this Court must invoke other methods of statutory interpretation to determine the meaning. In the absence of a statutory definition, "[t]he starting point in every case involving construction of a statute is the language itself." Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985) (citations and internal marks omitted); see also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 173-175 (1994). One frequently-used method is to resort to a dictionary definition for the "plain" or "ordinary" meaning of the terms at issue. E.g., Mississippi v. Louisiana, 506 U.S. 73, 77 (1992); Sanders v. Jackson, 209 F.3d 998, 1000 (7th Cir. 2000). Other possible avenues of interpretation include analyzing the structure or surrounding terms of the statute, see, e.g., Jarecki v. G.D. Searle & Co., 367 U.S. 303, 306 (1961); United States v. Dillinger, 472 F.2d 340, 363 (7th Cir. 1973), analogizing to similar statutes, see, e.g., Food & Drug Administration v. Brown &

3

Williamson Tobacco Corp, 120 S.Ct. 1291, 1306 (2000), and examining legislative history. Garcia v. United States, 469 U.S. 70, 75 (1985). The Court addresses each of these methods in turn.

Using a dictionary definition of "innocent" proves particularly unhelpful. Typical dictionary definitions of the term "innocent" are "guiltless" and "free from legal . . . wrong" See, e.g., The Random House Dictionary of the English Language 984 (2d Ed. 1987) (defining "innocent"). But Graphic's "guilt" or "legal wrong" is exactly what this Court is asked to determine. Consequently, the definitions beg the question to be answered.

Likewise, the structure of the statute does not particularly help. As noted above, both subsection 1 and 2 require different mental states and have different limits on remedies available to plaintiffs. A third difference is the type of defendant governed by those sections. Compare 15 U.S.C. § 111(4)(1) which applies to "any person" with 15 U.S.C. § 1114(2)(2), which applies only to infringers or violators "engaged solely in the business of printing the mark or violating matter for others." The relative scope of remedies might suggest that the availability of a broader remedy could require a higher mental culpability, but there is no indication from the language or structure of the statute whether congress intended printers to get better or worse treatment than other violators. Thus, the structure also is not helpful in determining the meaning of "innocent."[1]

Fortunately, the legislative history of the 1989 amendment to the Lanham Act provides some guidance. The congressional amendments to Section 32 of the Lanham Act extended the limitation on remedies to include both registered and unregistered trademarks and expanded the category of innocent printers and publishers to include broadcasters of electronic media. See NBA Properties v. Untertainment Records LLC, No. 99 CIV 2933(HB), 1999 WL 335147 at *13 (S.D.N.Y. May 26,

---

[1] The parties have not pointed to any analogous statutes where "innocent" is expressly defined or where courts have interpreted that term. This Court's research has likewise not turned up any such statute. Thus, this tool of interpretation is also unhelpful.

4

1999). House co-sponsor Robert Kastenmeier, explained that "the word 'innocent' is intended to encompass the [actual malice] standards set forth in New York Times v. Sullivan, 376 U.S. 254 (1964) and its progeny." 134 Cong. Rec. H10420 (daily ed. Oct. 19, 1988) (Remarks of Subcommittee Chairman Robert Kastenmeier). Although not dispositive, this Court accords the statements of a bill's sponsor "substantial weight in interpreting the statute." In re Petition to Inspect and Copy Grand Jury Materials, 659 F.2d 800 (7th Cir. 1981) (citing FEA v. Algonquin SNG, Inc., 426 U.S. 548, 564 (1976)), aff'd Illinois v. Abbott & Associates, Inc., 460 U.S. 557 (1983). In light of Representative Kastenmeier's statement, this Court holds that to be an "innocent printer" as that phrase is used in Section 32(2), Graphic must show that it neither (1) actually knew that the posters infringed upon the WWF's rights nor (2) recklessly disregarded a high probability that the posters infringed on the WWF's rights. See New York Times, 376 U.S. at 279.

In adopting the New York Times standard, the Court expressly disagrees with two previously-reported decisions, including one from another judge in this district, both of which applied a less stringent objective-reasonableness standard. See Conopco, Inc. v. Rosa Distributors, 967 F. Supp. 1068 (N.D. Ill. 1997); Polo Fashions, Inc. v. Ontario Printers, Inc., 601 F. Supp. 402 (N.D. Ohio 1984). The Polo Fashions case was decided before the 1989 amendments to the Lanham Act and did not have the benefit of Representative Kastenmeier's statements. 601 F. Supp. at 402-03. Further, although the Conopco case was decided after the 1989 amendments, the only reported case mentioned is the Polo case. 976 F. Supp. at 1069-70. There is absolutely no indication that Judge Plunkett was presented with any other case or made aware of the legislative history related

to the "innocent infringer" defense. Id. This Court, therefore, disagrees with and declines to follow the Polo Conopco cases.[2]

### Application of the Innocent Infringer Standard to Graphic

Graphic's motion for summary judgment is DENIED because there remains an issue of fact regarding the Graphic's mental state. Cases in which issues of motive or intent are paramount are "particularly inappropriate for summary judgment" because state of mind is rarely susceptible to direct proof, "but must be inferred from circumstantial evidence." Egger v. Phillips, 669 F.2d 497, 502 (7th Cir. 1982) (citations omitted). The WWF points to a multitude of "facts" and argues that they are both "material" and in dispute. Because many of these assertions are not facts, many are not genuinely in dispute, and many are not material, this Court focuses on the few that suggest the Court that the trier of fact is best suited to resolve this issue.

The crux of Graphic's defense is that it received an August 1998 letter from Posters. This "permission letter" states:

> [i]n response to your concerns of the rights for reproduction of our materials, Poster [sic] Inc. gives permission to reproduce and assumes all responsibility for its materials and has security rights to such materials.
>
> Posters Inc. holds Graphic Communication Services, Inc. and its employees, principals, and heirs harmless for its reproduction services rendered.

Although the timing of dispatch and receipt, as well as whether and who requested the letter is disputed, the source, content and the fact that it is unsigned is not disputed. Lucas testified that based on this letter, he believed that Posters had the "right" to reproduce the images requested by Posters. (Lucas Dep. at 167, 177).

---

[2] Of course, the decisions of another court within this district are not binding on this court but are merely persuasive authority. See, e.g., Alliance to End Repression v. City of Chicago, 820 F.2d 873 (7th Cir. 1998).

6

If this is true, Graphic would be off the hook and would not be liable for any damages or disgorgement of profits. Assuming that Graphic also wasn't reckless with respect to the WWF's rights, it would only be subject to an injunction against future printing. See infra regarding the limiting on remedies contained in Section 32 of the Lanham Act, 15 U.S.C. § 1114. Certain circumstantial evidence, however, calls into question Lucas's belief regarding Poster's rights and create a genuine issue with respect to whether Graphic knew or recklessly disregarded the WWF's rights to the images that Posters asked it to reproduce.

During his deposition, Lucas testified that he had seen one television advertisement for the World Wrestling Foundation. And, in response to the direct question "prior to March 24, 1999, you did not know what the WWF was," Lucas replied "exactly." (Lucas Dep. at 111). Lucas also testified generally that he did not know who the people were in the images that Posters asked Graphic to reproduce. As yet another example of Lucas' professed unfamiliarity with the WWF, Lucas struggled to remember the full name of the World Wrestling Federation sometimes referring to it as the "'World Federation' something," (Lucas Dep. at 160), the "world federation league of wrestlers or something" (id at 169), and the "world federation league" (id. at 170). This testimony suggests that Lucas was (and apparently remained, through the time of his deposition on September 7, 1999) largely ignorant of the cultural phenomenon that professional wrestling has become and the large part that the WWF plays in it.

In contrast to this testimony, the WWF produced an affidavit from Robert Menke, who was present when certain items were seized on March 24, 1999. Menke swore that Lucas threatened to counter sue the WWF because it had "deep pockets." Menke also swore that Lucas used the full character name "Stone Cold Steven Austin" that day on his own initiative. Characterizing the WWF as "deep pockets" and casually exhibiting knowledge of the names of a WWF wrestling star suggest

7

that Lucas is more knowledgeable about the WWF than he let on in his deposition. These facts are potentially inconsistent[3] with Lucas's earlier testimony where he couldn't even recall the actual name "World Wrestling Foundation."

More importantly, one inference that can be drawn from Lucas' alleged "deep pocket" reference is that he knew that the WWF was a large financial operation. It is undisputed that the permission letter is vague (it did not refer to any particular image), extremely broad (it purported to encompass all images that Posters provided to Graphic), and lacked legal formality (it was unsigned but purported to hold Graphic harmless). Although it is a thin reed upon which to balance a federal lawsuit, a trier of fact might infer that if Lucas knew that the WWF was a "deep pocket," he must also have known that a more precise or legally formal letter would have accompanied a request to reproduce the WWF's images. And, the lack of formality caused Lucas actually to know that Posters did not have the right to reproduce the images or to know of and recklessly disregard a high probability that Posters did not have such rights. Of course, the evidence as a whole does not demand that inference. Since these issues are best determined with live testimony, Graphic's motion for summary judgment is DENIED.

---

[3] Of course, these facts are also potentially consistent with Lucas' prior testimony. For example, other facts could have informed Lucas that the WWF was a "deep pocket." Just as plausible, Lucas may have simply assumed without knowing that the WWF was a deep pocket. Also, simply because Lucas knew and used the name "Stone Cold Steve Austin" does not necessarily mean that he knew or was reckless about Posters' rights with respect to the images in question. A trial of these issues in court is the best method of resolving these disputes.

8

## Conclusion

For the foregoing reasons, Graphic's motion for summary judgment is DENIED.

Enter:

David H. Coar

United States District Judge

Dated: SEP 25 2000

9